SOUTH PORTO RICO SUGAR CO., apelante y apelada, *v.* COMISIÓN DE SERVICIO PÚBLICO, apelada y apelante; JOSÉ RAMÓN QUIÑONES, interventor y apelante.

Número 10546.
*Sometido:* 3 de noviembre de 1952. *Resuelto:* 4 de noviembre de 1954.

*Hon. Secretario de Justicia José Trías Monge, A. Torres Braschi y Edgar S. Belaval, Procuradores Auxiliares,* abogados de la

apelante, Comisión de Servicio Público; *Pablo Defendini,* abogado del interventor apelante; *James R. Beverley, R. Castro Fernández* y *Francisco. Castro Amy,* abogados de la apelada; *Charles R. Hartzell, Rafael O. Fernández* y *José L. Novas,* como *amici curiae.*

*Per Curiam:* Tenemos ante nos una moción radicada por la South Porto Rico Sugar Company solicitando la reconsideración de la opinión y sentencia dictadas por nosotros en el caso de *South P. R. Sugar Co.* v. *Com. Servicio Público,* 73 D.P.R. 605. Los hechos se exponen totalmente en dicha opinión y es innecesario repetirlos en ésta. No nos detendremos a examinar de nuevo la cuestión de si la compañía compró la caña de sus colonos o si actuó como agente de ellos para la venta del azúcar producto de dicha caña. Suponiendo, sin decidirlo, que tales compras ocurrieron, tenemos no obstante que determinar qué precio de compra se estableció por las partes para el 12.55% del azúcar que se convirtió en vendible como cuotas adicionales durante 1949.

Estamos convencidos por la evidencia, incluyendo el Aviso que aparece en 73 D.P.R. a la pág. 613, escolio 3, ([1]) de que el arreglo entre la South Porto Rico Sugar Company y sus colonos fué que, tanto para el azúcar de la cuota original como para la de las cuotas adicionales, los colonos serían pagados en seguida al precio promedio mensual del azúcar entregada en Nueva York, *siempre que el azúcar fuera vendible a la fecha de entrega.* Creemos que la cláusula anterior en bastardillas era una condición implícita del arreglo entre las partes. ([2]) De esto surge que, a los fines de fijar los precios de compra de los azúcares de las cuotas adicionales, las fechas de entrega deben considerarse como pospuestas hasta

---

([1]) Suponemos asimismo, pero sin resolverlo, que el Aviso representaba los términos de un contrato entre la compañía y sus colonos.

([2]) En este caso no hubo contrato que dispusiera expresa y categóricamente que el azúcar de cuotas adicionales sería liquidada a base del precio para la fecha de la entrega verdad, más bien que a base del precio para la fecha en que vino a ser vendible. En consecuencia, es innecesario determinar si tal contrato sería válido bajo la Ley núm. 221, Leyes de Puerto Rico, 1942 ((1) pág. 1177).

las fechas en que dichos azúcares fueran vendibles como cuotas adicionales. Solamente en esa forma podía la intención de las partes—que, con respecto al azúcar producida por las cañas de los colonos que se liquidaba en dinero, la compañía tendría la elección (1) de vender el azúcar inmediatamente al precio prevaleciente en el mercado, o (2) de retenerla con fines de especulación—ser cumplida. Nuestra conclusión se refuerza con el hecho de que la obligación que tenía la compañía de pagar un precio específico no vino a ser exigible hasta que el azúcar de cuotas adicionales fué vendible.(³) Por consiguiente, en cuanto a la cuota del 12.55%, la compañía venía obligada a liquidar al precio promedio mensual del azúcar entregada en Nueva York para las fechas respectivas en que entraron en vigor las cuotas adicionales.

Nuestra sentencia ordena a la compañía "liquidar a los colonos los azúcares de las cuotas adicionales a los precios a que los mismos fueron por ella vendidos, menos los gastos de venta y mercadeo." Por los motivos aquí expuestos, dicha sentencia será modificada a fin de que disponga que la compañía liquidará los azúcares de las cuotas adicionales a los precios promedios mensuales del azúcar entregada en Nueva York para las fechas en que las cuotas adicionales entraron en vigor, menos los gastos de venta y mercadeo.

*La moción de reconsideración será declarada sin lugar.*

Los Jueces Asociados Sres. Ortiz y Sifre no intervinieron.

---

(³) Es interesante indicar que, después de surgir el problema aquí envuelto en 1949, el Secretario de Agricultura de los Estados Unidos hizo una disposición para la zafra de 1950–51 exactamente igual a la que aquí hacemos. En la Determinación Azucarera 877.3, de fecha 13 de diciembre de 1950, el Secretario dispuso en (b) *Paga básica*, (4) (ii), que si se liquida en dinero, la compañía pagará "por la caña de la cual se obtuvo la participación de azúcar crudo del colono que caiga dentro del aumento en la cuota para mercadeo del elaborador-productor que ocurra después de la terminación de la molienda de toda la caña de la zafra de 1950–51 en Puerto Rico, el precio promedio del azúcar crudo para los días de mercadeo dentro del período de 30 días (empezando con el primer día de mercadeo) inmediatamente después de la fecha de vigencia de la orden que permite el mercadeo de tal azúcar crudo, convertido al precio f.o.b. el molino." 15 Fed. Reg. 9036, 9037.